ABBEY v. United States Case No. 13-5009 And I understand, Ms. Stern, that you want to reserve four minutes for rebuttal? Yes, Your Honor. Okay. You may proceed. Good morning, and may it please the Court. Your Honors, if the Tucker Act did not exist, federal employees would still have a judicial remedy for Fair Labor Standards Act claims. Like non-federal employees, they could bring suits in the district court or state court. As the Supreme Court recently clarified in the Bormes decision, because the FLSA affords a complete judicial remedy, there is no gap for the Tucker Act to fill, and therefore, it is displaced. Can I tell you what I'm thinking about this and then tell me if this is wrong? It seems to me that when the alternative remedy is a remedy against the United States, as in Bormes, it's essential that the alternative remedy provide a waiver of sovereign immunity. And waivers of sovereign immunity are, in fact, attached to specific courts. Bormes said there's an alternative remedy there because the statute said you can sue in what district court. That's not true here. And so the only waiver of sovereign immunity is in the Tucker Act. And I realize that we said, though didn't hold, that there was a waiver of sovereign immunity in the FLSA in whatever that is. In Sorocco. In Sorocco. But that, in fact, miscited the source on which it relied, which said exactly the opposite. So I don't see a waiver of sovereign immunity in the FLSA itself, and therefore, it seems to me not to fit under Bormes. Well, I would disagree with the premise or part of the premise of your question, which suggests that for the waiver of sovereign immunity to exist, that there has to be a specific court identified. And I would disagree with it for this reason. Even though in Bormes, yes, the Fair Credit Reporting Act did identify the district court, the Supreme Court cited in Bormes to a much earlier case called Nichols. I understand that. But the crucial point for me about Nichols is that the alternative remedy there was not a suit against the United States. So no waiver of sovereign immunity was required. The alternative remedy was a tort suit against individual customs officers for which there's no sovereign immunity necessary.  Well, I think that the Supreme Court made it clear when they were reviewing those cases. I think they were anticipating exactly the point that you were making, that the waiver of sovereign immunity has to be attached to a specific court, rather. And they noted that some of their decisions did identify specific courts and make it clear that the court of federal claims didn't apply. But then they said that their cases collectively stand for a different proposition. That if there is the way, regardless of whether there's a waiver of sovereign immunity in that statute or not, that if there is a complete remedial scheme in the statute, then the Tucker Act doesn't apply. And I think it's instructive that the Bormes court did not remand the Bormes decision to this court because they hadn't found yet whether there was a waiver of sovereign immunity in the Fair Credit Reporting Act. If the Tucker Act could have applied as a court of competent jurisdiction, for example, it would have been the most natural thing for the Supreme Court to remand Bormes to this court. But they didn't do that. Don't you find that the difference in the language, though, between the Fair Credit Reporting Act and the Fair Labor Standards Act is meaningful? I mean, in Bormes, when they said it was a self-executing scheme, that's because the scheme itself said that every district court, by definition, was a court of competent jurisdiction. It's just a matter of grammar. When you read under the Fair Labor Standards Act, it says a federal court of competent jurisdiction. So, in other words, you still have to determine if it's competent. In the Fair Credit Reporting Act, the competency of district courts was assumed. Well, I would say two things about that, Your Honor. The Fair Credit Reporting Act also has a language. It's not just the district court. It also allows for jurisdiction in any court of competent jurisdiction. So, we still have that same language that we have in the Fair Labor Standards Act. I'm sorry, but as long as it says district court, it has defined that court as a court in which the United States has agreed to be sued. What we don't have is that here, so that in the predecessor case to Seraco, we said FLSA, says court of competent jurisdiction. That doesn't tell you what court it is. You have to look to another statute. And the only one on the table here is the Tucker Act, which is exactly the point that your brief made in Seraco. But I think the point that the Supreme Court is making in Bormes, especially, as I said, by not remanding it to this court, is that once the Tucker Act is displaced, it can't come into play. And it can't come into play to supply the waiver of sovereign immunity. They say that very specifically in the Fair Credit Reporting Act case. They say if there's no waiver of sovereign immunity, we can't have the Tucker Act come in to supply it. We can't have it come in for any reason. It's just completely displaced. Even if there was no waiver of sovereign immunity in the Fair Credit Reporting Act, we couldn't look to the Tucker Act for that waiver. So in this case, if the court believes that there is a waiver of sovereign immunity in FLSA, if they believe that actually that was a mistake and there isn't a waiver, it doesn't really matter. What matters is that there is a remedial scheme that Congress set forth. And when they set forth that remedial scheme, they were not contemplating another remedial scheme, which is the Tucker Act. The Tucker Act, and I think this is the point that the Supreme Court was trying to make, the Tucker Act is unlike many other jurisdictional statutes in that it is a remedy. It is an alternative remedy. It doesn't just identify a court the way 1331 does, for example. It contains a waiver of sovereign immunity. It contains a statute of limitations. When it was originally enacted, it was envisioned as an alternative remedy where no remedy existed for those statutes that just created a substantive entitlement but didn't talk about whether you could go to court or whether you could go to an administrative court or whether you could go anywhere. Maybe I'm into diagramming sentences or something, but I think that if you look at the language of the two, the one says district court, and then it says, then there's a phrase in between, and then later it says, or state court of competent jurisdiction. So clearly the competent jurisdiction is modifying state courts in that sentence. In the FLSA, it says federal or state court of competent jurisdiction. Something has to establish which federal court, and it doesn't say district court, so it leaves open the possibility there could be another federal court like the Court of Federal Claims. I'm sorry, I have to correct you, Your Honor, because the Fair Credit Reporting Act did not say in any state court of competent jurisdiction. The language from the Fair Credit Reporting Act is... Or in any other court of competent jurisdiction. In any other court of competent jurisdiction. So it could be a federal or state court of competent jurisdiction, which is the same language we have in the Fair Labor Standards Act. We have any other federal or state court of competent jurisdiction. And the Supreme Court said in the Jim Brewer case that that included a district court. And that was clear. The only thing that changed from the Jim Brewer case is that the United States was added as a possible employer. But there's no reason that federal employees can't sue their federal employer in district court. So there's no reason that that has to change. And there's no indication that when Congress added the United States as a potential employer, it envisioned a completely different remedy than already existed under the Fair Labor Standards Act for non-federal employees that brought state... So your position is that as a result of forms, the position that you successfully argued in Seraco is incorrect now? Yes, Your Honor. I would say that for me it clarified and really put in stark relief, especially because of the similarity between the language of the Fair Credit Reporting Act and the Fair Labor Standards Act, that that position was not correct. And then in fact, because the FLSA does have its own judicial scheme, that again, before it was made applicable to the United States, it was a complete remedial scheme and nobody had any problem and employees could sue their employers in district court. And the U.S. was added as an employer and federal employees can still sue in district court. So the Tucker Act is not needed for federal employees to have a remedy under the FLSA. And because it's not needed, it doesn't come into play at all. In fact, it simply is displaced. And that, I think, is the import of the Vormuth decision. So you're saying you have the accoutrements of a judicial action? Yes, Your Honor, in the FLSA. Exactly right. Can I turn to the merits? Absolutely, Your Honor. Not unimportant here. And let me again tell you what I'm thinking and ask you what's wrong. And this version of what I'm thinking is helpful to the government's position. Excellent, Your Honor. The claims court's rationale, I think, turns, unless I've misread it, entirely on its reading of the language, the provisions of Title V shall not apply. Is there anything incorrect, dangerous with saying that in the context where that provision applies, including the language that comes after it, including the more flexibility provision, et cetera, to read that language to mean that any part of Title V that constrains the FAA, but not parts of Title V that provide authority to the FAA, do not apply. And that would then eliminate from coverage of that sentence, the 5543 and 6122, that, in fact, provided the FAA the authority before the 1995 Act to provide non-pay for overtime. Or, alternatively, as the agency seems to read it, reads shall as need. That is, need not apply. Well, first I want to say that I do agree with your reading of the trial court's decision that it hinges entirely on the meaning of the phrase shall not apply. I do agree with your characterization of it as meaning need not apply as exempt. I want to get back to your question, but I might ask you to rephrase it a little, because I'm not sure I followed it completely. Title V shall not apply. That could mean every single provision in Title V, except the ones that we're going to write as exceptions later, don't apply. Or, linguistically, perhaps a strain, but perhaps not. It could mean any provision of Title V that restricts the ability of the FAA to do something does not apply. And then that sentence would not cover provisions of Title V that grant additional authority to the FAA. The additional authority provisions are ones like 5543 and 6122 that, in fact, before the 1995 Act, allowed the FAA to exempt itself, or OPM, to exempt parts of the federal government from the otherwise applicable FLSA provisions about overtime. All right, now I understand your question. I think, you know, it's hard for me to, in the abstract, think of any situation where that outcome might come from the narrower reading, where it only limits the FAA's ability to take on Title V provisions that limited it. But I think because it's hard to envision every possible situation, I think that the best and, more importantly, the most natural reading of the shall not apply is what Your Honor suggested, that it need not apply, and that the FAA is, in fact, free to choose any Title V provision to continue. Because what we have to remember is that the Title V system was an incredibly comprehensive system. It was a system that evolved over many years. But I mean, your point, I think, is that you don't have to be as nuanced as Toronto is suggesting, because if Title V doesn't apply, fine, it doesn't apply, but that doesn't mean we can't write on a clean slate. So it's not so much that anything in Title V is applying. They're just copying what was in Title V. Yes, Your Honor. Parody what was in Title V. And so I think that's what we said in Browarding, that they can write on a clean slate. Is that right? Yes, I think that's exactly what this Court said in Browarding, because the Title V provision that the FAA had basically adopted in that case, which was the GSP scale, it wasn't one of the Title V provisions that was specifically preserved to the FAA. But did that provision actually contradict another statute like the FLSA? That, it seems to me, is the critical thing to focus on. It's perfectly clear the FAA can, under this authority, choose to do a variety of things putting aside any question of inconsistency with other statutes. So Broadway didn't involve that. The problem here is that the FLSA all by itself, and here I'm going to put aside your argument that it itself allows, which I assume that I disagree with that for now. Then what you have is a question, can the FAA under this provision choose to do something that's otherwise illegal? Well, let me answer it this way. First of all, it's a two-step question, because the shall not apply, we've already disposed of that. We know from Broadway that that language doesn't preclude the FAA from adopting a Title V provision that wasn't specifically preserved. So now we're on to a second question. Can the FAA adopt some provision that violates the law? I wouldn't make the blanket statement that they could do that, but I would say that Title V provisions don't violate the FLSA. They create additional options under the FLSA, and among them are, for example, the Flexible Work Schedules Act, an act whose overriding purpose and policy was to grant flexibility. It seems anomalous to assume that a Congress that was trying to give the FAA greater flexibility than it had under Title V would also take away one of the most flexible provisions that it had under Title V, that yes, granted an additional option. It doesn't abrogate these appellees right under the FLSA, because they can get overtime pay any time they want. Before we run out of time, let me turn to the Section G-1, the language where it states that notwithstanding the provisions of Title V and any other personnel laws, the administrator shall develop and implement a personnel management system for the administration. Do you believe that that means that every federal personnel law, all of a sudden, didn't apply and doesn't apply to the FAA? Yes, Your Honor, although the definition of what a federal personnel law is outside of Title V, I think, is maybe not a settled question. I know in the Wayland Court, the judge actually found that the FLSA as applied to federal employees constituted a federal personnel law. We didn't make that argument in this case, and I'm not trying to erase it belatedly. I'm just saying that I'm not sure that there's total agreement on what the definition of every other federal personnel law is. Right. It would concern me, for instance, that the FAA could have written a scheme that exempted it from the Fair Labor Standards Act, exempted it from the FMLA, from Title VII. I mean, theoretically, if you read that in its broadest context, that's what you've come up with, right? Well, what you would have to read in its broadest context is what the nature of a federal personnel law is. So laws that apply generally to employers like Title VII laws, like the FLSA law, are not necessarily federal personnel laws, arguably. Again, we didn't make the argument in this case. I'm not trying to, but I'm recognizing the fact that the judge did in Wayland say that he believed the FLSA as applied to federal employees was a federal personnel law. I'm not going to say whether that's right or wrong, because we didn't make any arguments. That's an example of something that you would say without question is another federal personnel law. Outside of Title V, I really did spend some time thinking about this, and I actually could not think of anything that I was aware of that had been adjudged a federal personnel law that was not within the context of Title V, although I have to assume Congress did know of at least one, because otherwise they wouldn't have included that phrase, and we have to assume that phrase meant something. But I literally couldn't come up with one, and luckily in this case we're not dealing with one because we are dealing with provisions that emanate from Title V. Or they were simply being extra careful. Maybe, Your Honor. I think they really wanted to bend over backwards. I mean, the whole import of the legislative history and the very broad language here, where they gave sort of an open-handed delegation to the FAA, go ahead, go create, we're taking away Title V, but go ahead, use what you want, make something that's flexible for you. I think, yes, maybe they were bending over to be careful in case there was another federal personnel law outside of Title V that they didn't think of either. Or the argument was raised. Yes. Okay. Thank you, Your Honor. We'll restore your rebuttal time, and we'll give you two extra minutes to make up for the fact that I let her go. May it please the Court, Gregor Gilbrey from Woodland & Gilbrey representing the appellees. I'd like to address the jurisdictional issue first. In Borman, as Judge Toronto pointed out, it wasn't just that the court talked about a self-executing scheme. An essential part of that was, as the court stated in describing FCRA, that it was a carefully circumscribed, time-limited, specific course of action, and also precisely defined the appropriate forum in which the actions would be brought. And that was also true in the Horn case involving the Agricultural Marketing Act, the Supreme Court's case in March. The underlying statute stated that actions would be pursued in the district courts. Here, of course, under Section 16b. The single best point, in the absence of this sovereign immunity distinction that seems important to me, is the Nichols case from the mid-19th century, which was not just a passing citation by the Supreme Court in Borman. Borman, is that how you pronounce it? I pronounce it Borms, but I'm not sure of the correct pronunciation, Your Honor. Yeah, in Nichols, as the court pointed out, what the court was looking at, they were looking at whether the underlying statute under which they were suing provided an action against the federal government, and they found that there was an alternative remedy where they were focusing on court actions, I believe. Against the individual customs officers. Against the individual customs officers. Here, there's no doubt we're suing the federal government, the U.S. government, and we're suing under a statute which not only provides actions against the federal government, but the Fair Labor Standards Act applies to all employers. Private sector employers, state and local governments, and the federal government, and Section 16B actually predates the application of the Fair Labor Standards Act to the federal government. So what Congress was stating when they said any federal or state court of competition jurisdiction was, they wanted it as broad as possible. Wherever you go to normally sue for labor law violations, that court is going to have jurisdiction. They were doing the opposite of expressing a preference as to where the action should be brought. And what this required then is you can't look at the Fair Labor Standards Act and determine what court you're going to sue under. You have to go to a different statute. And so where do we go? We have to go to the sea of Title 28 jurisdictional statutes, and under Title 28, Congress has expressed a preference as to where they want actions involving monetary claims against the federal government to be filed. And that, of course, is under the Tucker Act. Under Section 1491, monetary actions are to be brought in the U.S. Court of Claims and in this court. And to make it even clearer, under Section 1346A2, they circumscribe the jurisdiction of the district courts to actions involving $10,000 or less. And so we're in a general Title 28, and it's long been held that under when you're thrown into Title 28 that for monetary claims against the federal government under the Tucker Act, the U.S. Court of Claims has jurisdiction. Now, the government says, well, we want to go to the district courts. Well, Congress never expressed that preference at all in the Fair Labor Standards Act. And similarly, there's no reason we would go to 1331 because it's long been held that you go to the Tucker Act to find where jurisdiction is in these actions. But what do you read the Supreme Court's phrasing as self-executing remedial scheme to mean? Well, in addition, they added it precisely defines the form. And what it means is, has sovereign immunity been waived? Does the underlying statute provide all of the improvements, as they say, to bring in action, damages, etc.? And does it tell you what court to sue under against the federal government? Or whatever action you're bringing, whoever you're suing. That's an essential piece of the court's decision. And that was true in Horn. It was true in Hink in the 2007 case involving the tax court. They have to identify in the statute Congress expresses, this is where we want you to sue. It's not like under the Fair Labor Standards Act where you're thrust into Title 28. Another statute has to be reviewed to determine jurisdiction. You can't determine jurisdiction by reading the Fair Labor Standards Act. And it certainly doesn't say the district courts. There's currently 19 actions pending in the U.S. Court of Claims on this issue. Six decisions have been issued. They've all determined they have jurisdiction, including a decision called in Berry v. U.S. that was issued yesterday by Judge Leto. And the reasoning is similarly that we need to look at another statute. We can't determine jurisdiction by just looking at the Fair Labor Standards Act. And once you go to Title 28, it's clear that the court has jurisdiction. I will also add that under Section 28 U.S.C. Section 610, the U.S. Court of Claims is within the definition of a federal court. So it is a federal court. If there are any questions on Gorham's, I'll turn to the merits. Okay. With respect to the merits, Chief Judge Hewitt's decision didn't simply hinge on the language that the provisions of Title V shall not apply that appears under G-2. Her decision also mentioned, and she exhaustively reviewed, the legislative history to the Appropriations Act and determined that, and the government doesn't disagree, that the purpose of the statute was to treat the FAA like a private sector employer, to give them the freedom that a private sector employer would have. Can you just clarify something for me? Yes. Assume you take out of the statutory analysis that Title V shall not apply language. What else in the statute, not the legislative history, not general purpose, what else in the statute would deprive the FAA of the authority under this flexibility provision and so on to choose compensatory time for the overtime situation? Okay. It's difficult to answer that because we have to look at another statute, Fair Labor Standards Act. By the statute, I meant the United States Code. Oh, okay. I'm sorry. I'm sorry I misunderstood you, Your Honor. That's a big statute. It is. It is. But I'm going to guess that there isn't very much you can point to. There is something I can point to, which is Section 7A of the Fair Labor Standards Act requires cash overtime pay and pay it time and a half. And the government acknowledges that it applies. It applies to the FAA, the Fair Labor Standards Act. And in every instance throughout history that the Congress has enacted an exemption to Section 7A. It's that important. It's done so by statute. And it did so by statute under Section 5543. So as I understand it, your position is that in order for the authority to be flexible to override the FLSA's command, the government actually needs the provisions of Title V, 5543, and 6122. They need those to apply. And we can see what the dangers are of not requiring that of them in this case because the air traffic controllers amassed thousands of hours of something called credit hours which had no cash value. Do I understand that unions, including the unions that operate under the FAA or in connection with the FAA, are not allowed to bargain away Section 7 of the FLSA? That's correct. That's a long-standing rule of the U.S. Supreme Court that unions cannot bargain away statutory rights under the Fair Labor Standards Act. That was held in Barentine v. Arkansas Best Freight where the minimum wage couldn't be bargained away. That was also held in... Let me ask you a practical question, though. The provision at issue here that you're complaining about is optional to the employee. It says at the request of an employee they can have comp time instead of time and a half. So why don't the employees just not request it? Okay, I'm glad you asked that question, Your Honor, because at the trial on liquidated damages it became apparent, and I'd like to clarify that for the Court. It wasn't as though these are people working in an office and they decide, hey, flexible schedule, I'm going to work an extra hour tonight, maybe take off an hour next week. The way the credit hours worked, and this is the testimony at trial, was that they were always performing operational work on the radar for them, and the two examples given at the trial were that someone would call in sick and the supervisor would say, hey, I need somebody to work overtime for that individual, and then an individual would say, I'll work the overtime and they'd be paid credit hours. All of the credit hours were operational. In addition, the other example given was... ...their own rules by not allowing the employee to opt for overtime pay instead of the credit hours? Yeah, there wasn't... They'd say, we only have credit hours available, we need somebody to work, and then somebody would say, I'll work the time because I know that's all we're going to get is credit hours, and that happened also when they were doing... The other example was training. They instituted a new type of radar, and the radar required people to go away and get trained, and so they'd need other people, because you've got to have somebody doing the aircraft. So you're saying it's, in effect, a false choice. Yes, I am. And it's undisputed that it had to be approved by supervisors, and that the supervisors were the ones that essentially... Where's this in the record? This is in... At the trial, pages 144, 179, 182... I'm sorry, these are appendix sites or something? Joint append... I'm sorry, Your Honor. These are from the joint appendix. Okay, say again. 144, 179, 182 to 83, 262, 303, 129 to 30. This is the train specifically. 179, I already said that. And then 304 through 305 was the radar system. And then the other thing to point out on the credit hours is, this isn't... The government tries to lead us to believe that they simply adopted Section 6123 and 6126. That isn't the case. 6126 only allows for a maximum of 24 credit hours to be accumulated at any one time. Here, the unlimited number of credit hours were worked and paid to the air traffic controllers. In addition, the 6126 requires that when somebody leaves a position for which they're receiving credit hours, that they be cashed out, they be paid. The FAA provided in the disagreement with their union that the credit hours had no cash value at all. So we have the situation where there's people with thousands of credit hours and effective October 1, 2009, there's no longer any credit hours or comp hours in the FAA. The practice has stopped. But they've accumulated them and they have no cash value whatsoever. So this is why the FLSA applies in the private sector because if you don't want employers having people work overtime, and then the overtime hours they work end up having no cash value. They work them for free. Similarly here, that's the break that was necessary and what Judge Hewitt found. But if you want to be treated like a private sector employer, that's great. That's what Congress intended. But if you're treated like a private sector employer, the break on you is that you follow the Fair Labor Standards Act in Section 7a. And if that hadn't applied or doesn't apply, then they can have these schemes where they can do whatever they want. If they can accumulate thousands of credit hours, which is in violation of Title V, there's no law that allows that whatsoever, then they can do whatever they want. Do they want to count certain hours not as hours of work? They could do it under their theory. Do they want to pay less than the minimum wage? They can do it if they want. They can get the union to agree to it, or if they want to impose that, that would be something they could do. Can I just clarify something? Do you really mean work for free? I mean, are these hourly, paid by the hour and the extra hours worked, they're getting paid, but just not time and a half or double or anything? Is it normal? Or do you mean that there's an annual salary, no matter how many hours they work in the absence of overtime pay, they're going to get the same salary? What I mean by work for free is that the credit hours, if you're compensated for working overtime in credit hours, then if you're able to do that. But are they not being compensated in any money for those extra hours? That's correct, Your Honor. And that's because they get a certain amount of money per month, and it doesn't matter how many? No, that has nothing to do with that, Your Honor. What it is, is it's an alternative form of overtime compensation that the union and the employer agree to, and the credit hours in their agreement, and you can't do this. Any other federal agency couldn't do this. They agreed they had no cash value. So if you don't use them as a form of leave, that'd be one way they'd have some value. Then they have no value whatsoever. So you really do mean they're working the extra three hours and not getting a dime extra for it? That's correct, Your Honor. That's correct. And that's what the Fair Labor Standards Act has intended to prohibit. Let me throw an analogy out there, or a hypothetical out there, that we were throwing around in chambers, and that is that since the government says that FAA could write on a clean slate, so they're not bound by Title V, they can write on a clean slate, and they can adopt a rule that makes them not bound by the Fair Labor Standards Act, apparently. So does that mean that they could, for instance, say that the FAA isn't bound by child labor laws, isn't bound by the FMLA, could just, again, do whatever it chooses, regardless of these other federal laws? That's correct, Your Honor. And there's virtually, not virtually, there is no indication whatsoever in the legislative history to suggest that Congress intended such a result. And as I mentioned, for the Fair Labor Standards Act, which I know from this case particularly well, that Congress has never allowed an employer to enact its own exemptions to the Fair Labor Standards Act, or exceptions, and to interpret the greater flexibility as providing the ability to do something like violate the entire FLSA would make no sense. And as I said, they did not, we should not be fooled to think that they just adopted provisions of Title V. They didn't do that. They went well beyond that. Now, one page to which you cited this is in this joint appendix that was provided. That doesn't mean, of course, that it's not part of the record. It means it's not part of what you provided to us. Should we supplement the record? I'm surprised because I have it. Well, I don't know that we don't have it somewhere. Okay. But I would be glad to supplement that within one that was marked up that I have here, Your Honor. We're going to have to have it. We have access to the entirety of the record. We just need to know where you want us to go. So those sites that you gave us, are those appendix sites or record sites? I thought they were appendix sites. Okay. That's all right. You have 30 seconds. Do you want to wrap up? Okay. To wrap up... Oh, no. I take that. Did you already give them the extra two minutes? Okay. All right. So you do only have 30 seconds. All right. All right. Just in 12 seconds. Also, the government has used the fact that it's not covered by Title V as a shield to any actions by employees when they are trying to cite Title V as a reason that they should get a benefit, such as in Back Pay Act awards, the government, this is the only agency that doesn't pay interest on Back Pay Act awards,  that we're not covered by Title V so we don't have to pay interest. Thank you, Your Honor. Okay. Thank you. Can you respond to my hypothetical? Does this mean that if the FAA can write itself out of the Fair Labor Standards Act that it can also write itself out of the Family Medical Leave Act or the child labor laws or the minimum wage laws? We'll have to give two answers to that question because, Your Honor, the FAA did not write itself out of the FLSA. I don't want to get too far into the facts because it's an appellate argument. I do disagree with the facts that were represented by my opposing counsel. The FAA has always said that the FLSA does apply to them and all of these appellees were entitled to FLSA overtime pay when they worked FLSA overtime. They opted instead to get compensatory time because they preferred to have time off rather than additional money. But the FLSA is not optional. The overtime pay is not optional. An employee cannot opt out of it. A union can't bargain out of it. That's true, Your Honor. Disagreeing with my premise, I don't know how you can do that. They are purporting to write themselves out of the mandatory aspects of the FLSA. And they do that pursuant to the reform legislation. So what we are construing here is the reform legislation. That's the legislation that's being interpreted. That's the legislation that was delegated to the FAA to interpret and administer and to the extent that it doesn't absolutely clearly enable the FAA to take advantage of the substance of the provisions of Title V that did give the option for compensatory time and for flexible work schedules. But what I'm hearing, you're saying that the employees opt for that comp time. But what I'm hearing from your opposing counsel is that a supervisor will say, look, we need somebody because planes are up there and we don't have somebody else here. So we need a person who can do this competently. And the only thing we have available is comp time. So it's your obligation as a human being and as a loyal employee to take that. Not true, Your Honor. That's why I'm saying I don't want to get into every single fact because I don't have enough time Yeah, but I want you into that fact. It's not true. The FLSA, in policy and in practice, an employee working FLSA overtime pay, the default is overtime pay, FLSA overtime pay. If the employee prefers comp time or if they are actually in a flexible work schedule and prefer to go under the flexible work schedule program and ask for credit hours, they can do that. That is always their option. And these employees, they liked it so much that they actually bargained for unlimited amounts of credit hours. They actually bargained because they wanted to have these options. They love these options and, in fact, they complained after the trial court's decision. Where is that? I understand. But where is the first premise in the record? Your Honor, I refer you to our Statement of Facts and Joint Appendix pages 234 to 235, 237, 307 to 308, 443 to 444, 456. This is on page 7 of our brief. I think there are a few other sites where we make the case that it was entirely at the employee's option. J8, again, Appendix 89. This is still on page 7 of our brief. So J8, 89, 278 to 279, 291, 299. But this, of course, all presupposes that the employee has the right to an option. Yes, and so let me get back to that because I really don't want to spend a lot of time on the facts. I think our brief covers the facts and that there's support for the facts in our brief. But I would say that, again, we believe the statute clearly authorizes the FAA to take advantage of this option that they had under Title V that every other federal agency still has, that state and local agencies have when Congress is trying to give the FAA greater flexibility. But they can't have it both ways. They take them out of Title V. They can't say that Title V is what gives us the right to do it. It's not Title V that gives them the right. It's the reform legislation that is delegated to the FAA to administer. And to the extent that there's perhaps a gap that Congress didn't specifically say you can take advantage of the substance of 5543, it's clearly a gap that the agency can fill. And deference would be due, under Chevron, to the agency's interpretation. Can I ask you, is there any doubt here? And by doubt, I mean including what was waived, argued, decided below about the following proposition, that all of the policies now challenged come within the authorization of 5543 and 6122, assuming those authorizations remain valid? Or is some of the policy at issue here something that goes beyond those authorizations? The compensatory time would fit, I believe, completely within 5543. The credit hours, I don't want to misspeak, I think for a time that went a little beyond what was in 6123 because the union had bargained for no limit on credit hours. Again, I'm going to caution and say that I believe that this is true. But the FAA did not necessarily have to adopt it exactly as it was in Title V because Congress gave them greater flexibility. Was there an argument, though, below by the plaintiffs that even if 5543 and 6122 remained as authorization, nevertheless, there is an FLSA violation here because the challenged policies, to any extent, went beyond those authorizations? I don't believe that was the... Well, he just argued here that, in fact, government employees of other agencies could monetize this compensation. These employees could monetize their compensatory time anytime. But not the credit hours. They could monetize their credit hours up to a certain number of credit hours beyond that because they had bargained for beyond that in exchange for value they could not. But the compensatory time, anytime they didn't use compensatory time... So now we've got something that's clearly not consistent with either Title V or the FLSA. Yes. That goes a little bit beyond the flexible work schedule that's in Title V and something that the appellees bargained for. Okay. We're over time. Thank you, Your Honor. Thank you.